C. B. FERREE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 61542. Promulgated June 10, 1935.

*N. C. Domhoff, Esq.*, and *John J. Dougherty, Esq.*, for the petitioner.

*John H. Pigg, Esq.*, and *D. L. Shepherd, Esq.*, for the respondent.

#### OPINION.

STERNHAGEN: The respondent determined a deficiency of $9,430.51 in petitioner's income tax for 1929. The respondent disallowed a deduction for loss upon the sale, through a broker, of 800 shares of Continental Can; and this disallowance is the only subject of controversy. At the hearing, the respondent, by an amended answer, claimed an increase of $261.32 in the deficiency by reason of a change in the treatment of a certain gain from capital gain to ordinary income. The petitioner expressly concedes the correctness of this increase, and it is therefore unnecessary to give it any consideration.

The facts are stipulated in writing, but it is unnecessary to set forth the stipulation at length. On August 26, 1929, the petitioner bought 1,000 shares of Continental Can for $86,950, took the certificates and put them in his safety-deposit box. December 19, 1929, he sold 200 of these shares and delivered certificates to the broker on December 20, retaining certificates for 800 shares. December 27, petitioner instructed the broker "to sell for him the eight hundred (800) shares of Continental Can Company stock represented by the certificates which remained in his safe deposit box." December 30, the broker sold 200 shares for $9,957, and December 31, 600 shares for $29,286. Petitioner, however, did not deliver the certificates and they continued to remain in his box.

January 31, 1930, petitioner, through the same broker, bought 500 shares, and February 3, 1930, he bought 1,000 shares. On February 4 the broker delivered certificates for 700 shares, which petitioner put in his box with the aforesaid certificates for 800 shares.

The petitioner treated the sales of December 27 and December 30, 1929, as being sales of the remaining 800 shares purchased in the preceding August, and deducted $30,317 as the resulting loss. This the Commissioner disallowed.

726

The respondent first defends his disallowance upon the theory that the sale of 800 shares in December 1929 was a short sale, the result of which could not be determined until the covering purchase, which the respondent regards as having occurred in the following January and February. Cf. *Robert W. Bingham*, 27 B. T. A. 186. He argues that the petitioner's failure to deliver the certificates to the broker at the time of the sale demonstrates a short transaction. But the evidence shows that the petitioner intended to sell the 800 shares which he owned, that he instructed the broker to sell such shares, and, in view of the fact that the broker promptly sold 800 shares, the conclusion is inescapable that the broker was carrying out the instructions and sold the shares he was directed to sell. There is not the slightest reason to believe that either the petitioner or the broker was considering a short sale, and the mere failure of petitioner to deliver the certificates is not alone sufficient to establish one.

The respondent argues further that even if there was not a short sale there was still no loss sustained in 1929, because the sale was incomplete until delivery of the certificates to the broker. Cf. *Charles H. Oshei*, 31 B. T. A. 23; *Francis S. Appleby*, 31 B. T. A. 533; *Beardsley Ruml*, 31 B. T. A. 534. In *Francis S. Appleby, supra*, the situation differed only in that the omission to deliver the shares sold was a mere inadvertence and for a short period, while in the present case there is no evidence of inadvertence and the period of nondelivery was substantial. However, there is no explanation for the nondelivery of the shares from which it could be found whether the delay was deliberate or served any purpose. In both *Charles H. Oshei, supra*, and *Beardsley Ruml, supra*, the shares were in the rightful possession of another and the taxpayer was therefore unable to make the delivery until the claims of the holder were satisfied. There was substantial reason, therefore, in those cases why the sales could not be said to be complete. In the present case, the failure to deliver appears to have been without substantial significance. In all substantial respects the transaction was complete and petitioner had realized the results of his purchase and sale as completely as he ever would. Indeed, if we are to treat the broker as a mere agent, it must be assumed that in behalf of his principal, the petitioner, he made a delivery as required by the rules of the Stock Exchange, and thus completed the sale. It was to his own broker that the petitioner was then obligated to deliver the certificates, and we can not regard his delay as postponing the realization of loss. The deduction for 1929 was proper.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

BLACK, dissenting: Article 171 of Regulations 74, relating to deductible losses, contains, among other things, this language: "Losses must usually be evidenced by closed and completed transactions."

To constitute a completed sale of stock on a stock exchange there must be delivery. See G. C. M. 12570, C. B. XIII-1, p. 114. In this memorandum the General Counsel of the Bureau of Internal Revenue ruled that where a contract to sell stock on a stock exchange was entered into on December 31, 1930, and delivery of the stock was made in the regular way on January 2, 1931, the loss, if any, was incurred in the year 1931 and constituted a proper deduction for that year. In this ruling, I think the General Counsel was correct.

In *Charles W. Dahlinger*, 20 B. T. A. 176; affd., 51 Fed. (2d) 662, we said: "Although a contract to sell is consummated when the parties execute it, a sale, even where the subject of a contract, is incomplete and imperfect until title passes. But a sale is complete when title passes   *   *   *."

In the instant case there appears to be no evidence that petitioner made any delivery, either actual or symbolical, in 1929, of the 800 shares sold. Quoting from the majority opinion: "December 27, petitioner instructed his broker 'to sell for him the eight hundred (800) shares of Continental Can Company stock represented by the certificates which remained in his safe deposit box.'" Whatever might have been his intentions as to the delivery of these 800 shares of stock represented by the certificates which were then in his safe-deposit box, petitioner did not deliver them. He evidently changed his mind and converted what appears to have been an intention to sell shares of which he was actually possessed, into a short sale, because what he actually did was to cover his sale of 800 shares in 1929 by purchases of 1,500 shares of the same stock on January 31 and February 3, 1930. After petitioner had made these later purchases, the 800 shares which he had sold in December 1929 were subtracted therefrom and the broker delivered to him 700 shares representing the balance of his 1930 purchases. These 700 shares, the majority opinion states, "petitioner put in his box with the aforesaid certificates for 800 shares."

Under these circumstances, it seems to me that petitioner is in no position to claim a loss on the sale of 800 shares of Continental Can Co. stock in 1929. If what petitioner actually did in these transactions is to be construed as a short sale of the 800 shares in question, then it is clear petitioner could not claim any loss in 1929. Cf. *Robert W. Bingham*, 27 B. T. A. 186. But whether the transaction be treated as a short sale or as an ordinary sale, there was no com-

pleted transaction in 1929 and the claimed loss is not deductible. *Charles H. Oshei*, 31 B. T. A. 23; *Beardsley Ruml*, 31 B. T. A. 534. In the latter case, among other things, we said:

The petitioner's counsel would have us completely ignore the fact that a "short" sale was effected in 1928 of the 2,500 shares of stock in question. This he dismisses with the explanation that "There is no magic in the word 'short'", which, he says, was used by the broker to "signify that delivery of the stock was yet to be made." Furthermore, notwithstanding his case must rest upon the proposition that there was a closed and completed sale in 1928, he would also have us ignore the fact that there was no delivery of the stock until the following year. Neither of which may we do.

In the instant case, as I construe the transaction, there never was any delivery of the 800 shares which petitioner says he instructed his broker to sell. The contract of sale was covered by purchases in 1930 and petitioner remained possessed of the same certificates for 800 shares which he had in his deposit box at the time he gave his broker orders to sell, December 27, 1929. Under these circumstances it seems to me there is no better ground to allow petitioner's claimed loss than there was in the *Oshei* and *Ruml* cases, in both of which we denied the losses claimed in the taxable years which were before us.

Decision should be for the respondent.

SMITH, ARUNDELL, and TURNER agree with this dissent.